503 P.2d 949

**STATE of Arizona, Appellee,**

v.

**Jose Antonio Torres VALENZUELA,**
**Appellant.**

**No. 2430.**

Supreme Court of Arizona,
In Banc.

Dec. 7, 1972.

Rehearing Denied Jan. 16, 1973.

Gary K. Nelson, Atty. Gen., Phoenix by Howard F. Fell, Asst. Atty. Gen., Tucson, for appellee.

Howard A. Kashman, former Pima County Public Defender, Edward P. Bolding, Pima County Public Defender by Raymond R. Hayes, Deputy Public Defender, Tucson, for appellant.

HAYS, Chief Justice.

Joe Valenzuela, defendant, was convicted of robbery, aggravated battery, and forgery, and was sentenced to three concurrent terms of 12–15 years, 4–5 years, and 4–5 years respectively.

His attorney feels that there are no real issues to appeal, but has filed an "Anders" brief, setting out four possible areas of error.

Edward Fields, Jr., a University of Arizona student, testified as follows: He was walking home about 1:30 A.M. from a party, in Tucson, when he was offered a ride home by defendant, who was a passenger

**2**

in a dark-colored Maverick. After Fields got in the car, defendant threatened him with a club and ordered him to lie down in the back seat. He then ordered Fields to turn over his wallet, which he did and soon thereafter the car was stopped and defendant ordered Fields to get out of the car and lie on the ground, and kicked him in the face several times. Defendant told Fields that he had a gun. Upon request, the wallet was returned, but defendant kept $6 and a credit card which were in it. Fields suffered a broken nose and considerable pain from the kicks. The car drove away and Fields walked the rest of the way home and called the police. He was treated at the university infirmary. The credit card taken from him was used to purchase gasoline in the amount of $5.84 by forging Fields' signature. The driver of the car never turned around, and followed the orders of defendant.

The driver of the car was one Jimmy Ibach. He corroborated Fields' story in every way. His trial had not yet been had and was pending. Defendant elected not to take the stand.

Defendant raises four questions:

■ 1. Was a certain conversation erroneously admitted in evidence? While defendant and Ibach were in jail, together with several others, Ibach testified that defendant asked one of the others whether the latter knew a Leroy Taylor. The man answered "Yes" and defendant then said to him: "He's going to kill [Ibach]." After the arraignment, Ibach asked defendant how much time he (Ibach) might expect for his part in the crime, and defendant said that he would not get any time because he (Ibach) would be dead. Ibach also testified that defendant told him not to testify and to get hold of the filling station attendant (presumably for the purpose of preventing him from testifying). Defendant claims that this testimony was prejudicial and irrelevant.

It is our opinion that these conversations amounted to threats against Ibach's life if he testified and, as such, they were very relevant.

"In a criminal prosecution any attempted intimidation of a witness is properly attributable to a consciousness of guilt, and testimony relating thereto is relevant and admissible in evidence." People v. Bloom, 370 Ill. 144, 18 N.E.2d 197, 199 (1938); People v. Smith, 3 Ill.App.3d 958, 279 N.E.2d 512 (1972). See also State v. Adair, 106 Ariz. 4, 6, 469 P.2d 823.

■ 2. Did testimony by Ibach that defendant told him to go to see the gas station attendant prejudicially affect the jury? Defendant argues that the witness later stated that he was not sure what defendant had said. The transcript, however, shows Ibach's testimony to be:

"I don't recall what he said. He just told me to get a hold of him not to testify."

\*    \*    \*    \*    \*    \*

"I'm sure he said: 'Get a hold of him.'"

Defendant's second point is almost the same as his first one, and is controlled by the same law. The evidence was admissible.

■ 3. Were statements made by defendant to a detective, while in custody, voluntary? The Miranda rights were read to defendant in full. Following that procedure, the detective "suggested" that he talk about the stolen credit card and told him that "it would be helpful if he talked." At that point, he had already been sentenced on the robbery count. Defendant stated that the detective entered the interrogation booth and said that the sentence was not severe enough, that he knew defendant had used the credit card, and that he was "going to give me more time." He made no promises of leniency to defendant, according to the latter's own testimony. All of this testimony came out at a voluntariness hearing, after which the judge found that defendant's statements were voluntary and were made after hav-

ing been advised of his rights. We find no error here.

4. Was the sentence excessive? The argument here is that defendant is only twenty years old, and that the goals of criminal sentences are rehabilitation. Defendant neglects to mention that there are also other goals. In any event, we have repeatedly held that if a sentence is within the statutory limits, we will not modify it in the absence of unusual circumstances. State v. Small, 105 Ariz. 363, 368, 464 P.2d 955.

The judgment of the Superior Court is affirmed.

CAMERON, V. C. J., and. STRUCK-MEYER, LOCKWOOD and HOLOHAN, JJ., concur.