289 So.2d 769 (1974)
Robert L. PHILLIPS, Appellant,
v.
STATE of Florida, Appellee.
No. 72-630.
District Court of Appeal of Florida, Second District.
February 6, 1974.
Rehearing Denied March 7, 1974.
*770 John L. Riley of Riley, Schowe & Saltsman, St. Petersburg, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for appellee.
McNULTY, Acting Chief Judge.
Appellant was charged with manslaughter in two counts. Count one was predicated on culpable negligence in the operation of a motor vehicle and count two charged operating a motor vehicle while intoxicated. The victim was the same in each count. The trial court, in a non-jury trial, found appellant guilty on both counts and two concurrent sentences were imposed.
It undisputedly appears that appellant owned a Dodge "Super Bee" automobile which he had "souped up" with a 383 cubic inch, 425 h.p. engine for purposes of making a dragster out of it which he intended subsequently to race at a drag strip. On the afternoon of the tragedy, he had been drinking with the victim in this case, John Allen Creamer, to whom he was trying to sell the Super Bee. Appellant testified as follows:
* * * * * *
"Q What time did you get to the Midway [a local tavern]?
A Approximately four.
Q And met John?
A Yes, sir.
Q And shot pool and drank some beer?
A Yes, sir.
Q You said your liability insurance was revoked because  why was your liability insurance revoked?
A Well, I had liability on my truck and Volkswagon, but on the Super Bee, that's why I was trying to sell it, had too much horsepower. That was the letter I got back from the people. They didn't really revoke it, just said they would not cover it because it was a four-speed car and all souped up and everything.
Q That is the only reason they give for revoking your insurance?
A Yes, sir. On the insurance policy it was wrote down as a 318 engine. They didn't ask the size, but it was a 383 and 425 horsepower.
* * * * * *
Q You can remember the conversation you had with John, can't you?
A Yes, sir. He asked what it would do in a quarter, how fast it would run, because I spend a lot of time out at Sunshine Drag Strip, and I was familiar with race cars and so forth. That's one of the reasons I had the car souped up, we were going to race it at the drag strip.
Q You've been to the drag strip a lot and seen a lot of races?
A Quite a bit, yes, sir.
Q You've seen races when it's been kind of wet or damp or raining?
A Only the stock car races. If it just drizzles, they run stock cars. They won't run the drags, no, sir.
Q Why?
A That car won't stay under control, looses [sic] control.
Q What is your car? What is [it] considered? Stock car, dragster, or racer?

*771 A It was approaching a dragster, had a lot horsepower. It still had the facilities to stay on the street. It wasn't taken off the streets yet.
Q Close to it though, right?
A Yes, sir. It was approaching. That's one reason I wanted to get rid of it.
Q So you weren't [sic] talking about how fast it would go and the purpose to go in the car was to demonstrate it?
A We was going to demonstrate it, yes, sir. It wasn't raining when we left there, though."
Appellant further testified that he and Creamer left the bar and were proceeding to an appropriate place of demonstration, but he cannot recall clearly any significant details thereafter. Other witnesses testified, however, that a drizzling rain had begun and that the streets had become slippery. One witness testified that he noticed the Super Bee approaching him from the opposite direction at approximately 40-45 m.p.h. (the speed limit was 40), that as it passed him he heard the engine suddenly rev up and that he looked into his rear view mirror and saw the Super Bee go out of control. It was also established that the car shot across the center line, struck the side of another oncoming car and then, passenger side to, slid broadside into an oncoming truck. Creamer, who was found strapped in the passenger seat by a seat belt and shoulder harness, subsequently died of injuries sustained. Considering these facts most strongly against appellant, as we must do in the present posture of the case, we affirm as to count one.
Clearly, the trier of fact could have determined from all of the foregoing that that quantum of negligence was committed by appellant which amounted to that indifference to consequences, or to that wantonness or recklessness or grossly careless disregard of the safety of John Creamer and of his rights which was the equivalent of an intentional violation of them. That's culpable negligence.[1] The Super Bee in this case was like a cocked, hair-triggered pistol, requiring extremely gentle handling; and when operated in the manner and under the conditions testified to it was as though appellant was riding on a bumpy road with that pistol on his lap pointed at John Creamer. If such were the case, and the jouncing caused the weapon to fire killing Creamer, a trier of fact surely could well find culpable negligence within the purview of our manslaughter statute, § 782.07, F.S. 1971, F.S.A. Analogously, we see no difference here.
Concerning the second point, however, there is considerable question as to the sufficiency of the evidence presented to establish manslaughter by operating a motor vehicle while intoxicated as proscribed by § 860.01(2), F.S. 1971, F.S.A. But we need not decide the point since a judgment of manslaughter on the culpable negligence count is sustainable as aforesaid. In any case, only one judgment and one sentence is appropriate. There was only one homicide.
Accordingly, the judgment of guilt of manslaughter is hereby affirmed, but the cause is remanded for the entry of but one judgment and the imposition of but one sentence.
Affirmed in part, reversed in part.
GRIMES, J., concurs specially with opinion.
SCHWARTZ, ALAN R., Associate Judge, concurs.
GRIMES, Judge (specially concurring):
Regardless of whether it was sufficient to convict under Count Two, there was substantial evidence of drinking which the trier of fact was entitled to consider as part of the totality of circumstances warranting conviction for culpable negligence. Hunt v. State, Fla. 1956, 87 So.2d 584.
NOTES
[1] See, Cannon v. State (1926), 91 Fla. 214, 107 So. 360.