659 P.2d 645

**STATE of Arizona, Appellee,**

v.

**Jose Joseph Allen ROBLES, Appellant.**

**No. 5315.**

Supreme Court of Arizona,
En Banc.

Jan. 25, 1983.
Rehearing Denied March 8, 1983.

Robert K. Corbin, Atty. Gen., Phoenix, by Bruce M. Ferg, Asst. Atty. Gen., Tucson, for appellee.

Charles L. Weninger, Tucson, for appellant.

HAYS, Justice.

After a jury trial, Jose Joseph Allen Robles was convicted of two counts of first degree murder and sentenced to two concurrent life sentences. We take jurisdiction of this appeal pursuant to A.R.S. § 13–4031 and A.R.S. § 13–4035 and we affirm.

Appellant was charged with the murders of James Warren and Theresa Marquez committed on September 13, 1978, in Tucson, Arizona. Apparently, Robles had agreed to sell Warren heroin, but gave him a balloon filled with dirt rather than the drug. When Warren and Marquez came to complain, Robles said he would take them to the supplier and make it right. Later that day the bodies of the victims were found in a car. Both had been shot in the head. Testimony of various witnesses connected Robles with the murders.

Appellant presents four questions on appeal:

1. Did the trial court err in denying appellant's motion for mistrial based on the prosecutor's opening comments?

2. Did the trial court err in excluding extrinsic evidence to impeach Nicky Simmons?

3. Did the trial court err in not allowing the impeachment of Joe Alvarez through a specific act of misconduct?

4. Was appellant denied effective assistance of counsel?

I

Appellant first asserts a mistrial should have been granted because the prosecutor's opening comments prejudiced him before the jury.

In his opening statement, the prosecutor said Lou Matus, a convicted juvenile, would testify that while Matus, Robles and Joe

Alvarez were in the Pima County Jail, Robles had asked Matus to stab Alvarez in the eye with a broom. Alvarez apparently intended to testify that Robles had confessed the murders to him. The prosecutor went on to say that Matus was testifying pursuant to an agreement that he would be transferred to another jail facility because of his fear of reprisals from Robles.

Appellant contends these statements suggested to the jury that he was a bad man whom even the Department of Corrections feared. He also says these comments made the jury aware he was in jail and suggested that he would be convicted and continue to be in jail.

■ The trial court is the one to rule on whether an attorney's remarks require a mistrial, *State v. Gonzales,* 105 Ariz. 434, 466 P.2d 388 (1970), and its sound discretion will not be disturbed unless it is plainly abused. *State v. Christianson,* 129 Ariz. 32, 628 P.2d 580 (1981). The general criteria for determining whether remarks by the prosecutor in a criminal case are so objectionable as to require a reversal of the case are whether the remarks call to the attention of the jury matters which they would not be justified in considering in order to arrive at their verdict and whether the jury, under the circumstances of the case, was probably influenced by those remarks. *State v. Landrum,* 112 Ariz. 555, 544 P.2d 664 (1976).

■ The prosecutor's comments concerned evidence that was properly before the jury. Evidence of a defendant's threats against a witness are admissible. *State v. Valenzuela,* 109 Ariz. 1, 503 P.2d 949 (1972).

■ Evidence that appellant was in jail was not untruthful and was presented by many other witnesses, including Robles himself. Additionally, the fact that testifying prisoners have cause for fear was brought out by appellant's own attorney. The trial judge instructed the jury that any comment of counsel which had no basis in the evidence was to be disregarded. The trial judge properly found that the prosecutor's remarks did not prejudice the defendant and there was no error in denying a mistrial.

## II

Flora Herndon was the mother of the victim, James Warren, and of Nicky Simmons. On the day of the murders, Herndon made a tape-recorded statement at the Tucson Police Department. She said in the statement her son Nicky had told her that same day that he did not know who left the house with James and Theresa. Flora Herndon died before the trial.

Nicky Simmons testified for the state at the trial. On cross-examination by defense counsel, Simmons denied making the statement his mother had attributed to him and stated that he had seen James and Theresa leave with Robles. Defense counsel sought to admit the tape recording by Herndon to impeach Simmons. The trial court ruled that the evidence was hearsay and inadmissible.

Appellant argues it should have been admitted under 17A A.R.S. Rules of Evidence, rule 804(b)(5). This exception to the hearsay rule allows evidence to be admitted if it possesses equivalent circumstantial guarantees of trustworthiness and is evidence of a material fact and the interests of justice would be served by its admission. The trial judge ruled the tape recording did not have sufficient guarantees of trustworthiness and thus could not be admitted under the exception.

■ In evaluating this action by the trial court, we first note that the admission or exclusion of evidence is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Macumber,* 119 Ariz. 516, 582 P.2d 162 (1978).

■ We have not previously considered the question of how a trial judge is to evaluate admissibility of evidence under Rule 804(b)(5). Our Court of Appeals in *State v. Hughes,* 120 Ariz. 120, 584 P.2d 584 (App.1978), approached the problem by comparing the evidence under scrutiny with each of the other four exceptions under Rule 804(b)(5) (former testimony, statement under belief of impending death, statement

against interest and statement of personal or family history).

Udall and Livermore, discussing the Hughes case in their treatise on Arizona evidence, state "[t]hat is too mechanistic an approach to the matter." Udall, *Arizona Evidence* 2d § 136 at 305. We agree. We prefer and we now adopt the approach used by many of the federal courts which requires the judge to look at each case individually and determine the reliability of the particular evidence based on whatever circumstances exist in that situation. This approach requires that the evidence be reliable within the spirit rather than the letter of Rule 804(b), *see Weinstein's Evidence,* Vol. 4 ¶ 804(b)(5)[1] (1981), and thus allows for judicial discretion to accommodate unusual situations not foreseen by the drafters of the rules when they enumerated the other four exceptions.

Factors which have been considered by federal courts are: presence of oath or cross-examination, *United States v. Bailey,* 581 F.2d 341 (3rd Cir.1978); ability of a declarant to perceive clearly, amount of time between event and declaration, *United States v. Medico,* 557 F.2d 309 (2nd Cir. 1977); corroboration, self-incriminatory nature of the declaration, *United States v. Wingate,* 520 F.2d 309 (2nd Cir.1975); declaration was unambiguous and explicit, contrary to pecuniary interests, *Huff v. White Motor Co.,* 609 F.2d 286 (7th Cir.1979); and multiple levels of hearsay, *United States v. Fredericks,* 599 F.2d 262 (8th Cir.1979).

■ The trial judge here followed the approach we have prescribed. He considered that the statement by Flora Herndon was not under oath; there had been no opportunity to cross-examine Herndon; the statement involved a multiple hearsay situation; there was little corroboration of Simmons' statement; and Herndon's statements about what Simmons had said were not in response to any specific questions by the detectives, but were part of a rather long, rambling soliloquy by Herndon. We cannot say that he abused his discretion in reaching the conclusion that the tape recording by Flora Herndon lacked sufficient circumstantial guarantees of trustworthiness and therefore cannot find error in its exclusion.

We note also that Herndon's testimony at the preliminary hearing was the opposite of appellant's interpretation of her statement on the tape.

### III

Appellant argues it was error for the trial judge to prevent him from impeaching Joe Alvarez with evidence of a prior bad act.

On cross-examination, defense counsel asked Alvarez if he himself had once stabbed a jail inmate with a broom. Apparently, counsel hoped to suggest that because Alvarez had done this before, it was likely he and Matus had invented the story of Robles asking Matus to do it. The trial court excluded the answer ruling it irrelevant, but allowed defense counsel to inquire as to Alvarez's knowledge of the practice in general.

■ Appellant asserts this evidence is admissible under 17A A.R.S. Rules of Evidence, rule 404(b), which permits the admission of evidence of prior bad acts for purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Assuming this to be correct, the evidence may still be excluded under Rule 403 if the trial judge finds its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

■ Here, the trial judge so found, and we will not disturb his ruling since there is no showing of abuse of discretion or prejudice. *State v. Carriger,* 123 Ariz. 335, 599 P.2d 788 (1979).

### IV

Robles asserts he did not receive effective assistance of counsel at his trial.

■ To be effective, counsel must display minimal professional competence. *State v. Watson,* 134 Ariz. 1, 653 P.2d 351 (1982).

Robles' attorney on appeal was also his trial counsel and is thus in the awkward position of arguing his own ineffectiveness. We find that he has been ineffective only in that endeavor. The two failures he assigns to his performance do not warrant reversal of this conviction.

 First, Robles' lawyer says he should not have waived the mistrial after the defendant's mother testified that Robles previously had been incarcerated. The record shows, however, that defense counsel considered the mistrial, discussed it with his client and refused it. He apparently felt there was a good chance the jury would acquit the defendant. This is no more than a choice of tactics, which, as we previously have said, does not constitute ineffective assistance of counsel. *Watson, supra.*

Cited as counsel's second inadequacy is his untimely objection to the state's admission of several photographs. The photographs had height markings on them and could have been perceived as "mug shots." Appellant contends it was error to allow the jury to see these photographs and that he was prejudiced by his counsel's failure to object until after the jury had already seen the pictures. We cannot see how Robles was prejudiced by the jury's seeing the photographs since other witnesses, including the defendant himself, had testified that Robles previously had been incarcerated. No prejudice can result from seeing that which is already known. *United States ex rel. Stahl v. Henderson,* 472 F.2d 556 (5th Cir.), *cert. denied,* 411 U.S. 971, 93 S.Ct. 2166, 36 L.Ed.2d 694 (1973).

Where any error on counsel's part did not result in prejudice to defendant, there is no reversible error. *State v. Pacheco,* 121 Ariz. 88, 588 P.2d 830 (1978). There was no ineffective assistance of counsel.

Pursuant to A.R.S. § 13–4035(B), we have examined the entire record and found no fundamental error. The judgment of conviction and the sentence are affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.