The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

James A. LOWE, Defendant-Appellant.

No. 82SA372.

Supreme Court of Colorado,
En Banc.

Feb. 28, 1983.

As Modified on Denial of Rehearings
April 4, 1983.

J.D. MacFarlane, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Valerie McNevin Petersen, Asst. Atty. Gen., Enforcement Section, Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Deborah S. Waldbaum, Deputy State Public Defender, Denver, for defendant-appellant.

NEIGHBORS, Justice.

The defendant appeals his convictions on two counts of first-degree murder. The

defendant urges two grounds for reversal. First, the defendant argues that the trial court improperly admitted Exhibit Q–1 into evidence. Second, he contends that his convictions for first-degree murder must be reversed because a person can be convicted of only one homicide offense where there is but one victim. We affirm the trial court's evidentiary ruling and remand the judgments of conviction for further proceedings consistent with this opinion.

On June 26, 1979, eleven-year-old Michelle Conley was murdered at the Pinehurst Country Club (Club). The defendant, a maintenance man employed at the Club, was arrested at his residence the following morning. On June 29, 1979, he was charged with first-degree murder, *i.e.*, murder after deliberation,[1] and first-degree kidnapping.[2] At the preliminary hearing in the county court, the defendant was bound over to the district court for trial only on the murder charge.

The defendant filed a motion to suppress evidence. The district court suppressed all statements made by the defendant and certain items of physical evidence. The People filed an interlocutory appeal to this court. We affirmed the trial court. *See People v. Lowe,* 200 Colo. 470, 616 P.2d 118 (1980).

Following the remand of the case to the district court, the People filed a motion to add a second count to the information charging the defendant with first-degree murder, *i.e.*, felony murder by reason of sexual assault on a child.[3] The motion was granted over the defendant's objection. The district court held a preliminary hearing on count two. The court found there

was probable cause to believe the defendant committed the crime charged.

The case was tried to a jury. The following evidence is relevant to our resolution of this appeal: Michelle was swimming at the Club. She left the pool area to go to the women's locker room. The defendant took Michelle into a small electrical room behind the engineer's office located in the basement of the Club where he forced her to perform fellatio. Two weeks prior to the murder, orthodontic braces had been placed on Michelle's teeth. When the braces cut his penis, the defendant became angry and killed the child. The parties stipulated that the cause of death was trauma to the head due to a blunt instrument. The evidence also indicated the defendant attempted to kill Michelle by strangling and/or suffocating her. The defendant wrote incriminating letters, including Exhibit Q–1, to fellow inmates at the Denver County Jail. The letters were admitted into evidence.

The jury returned its verdict finding defendant guilty of both murder after deliberation and felony murder. The trial court entered a judgment of conviction on each count. The defendant was sentenced to the Department of Corrections for life.

## I.

The defendant's first argument is that the trial court erred in admitting Exhibit Q–1 because the document was irrelevant and prejudicial.[4] At trial, defense counsel objected to the introduction of paragraph 1 of the exhibit on the ground it was prejudicial. The alleged error was not specifically raised in the defendant's motion for a new

---

1. Section 18–3–102(1)(a), C.R.S.1973 (1978 Repl.Vol. 8).

2. Section 18–3–301, C.R.S.1973 (1978 Repl.Vol. 8).

3. Section 18–3–102(1)(b), C.R.S.1973 (1978 Repl.Vol. 8).

4. The text of the letter is as follows:
"CHUCK,
Dig It BUDDY,
I'm writing this note to you to keep away from my Bitch! You ain't nothing but a Bitch yourself, and if you continue to fuck

with Cookie I'm going to fuck your toothless face! You hear that, Bitch? Well take heed cause I mean it! And if that ain't enough for you there's this sick mutha-fucker up here name Cosmo, and all I got to do is give him a carton of Camels and he'll violate your anel [sic] cannal [sic] like the whore you are! If that isn't enough to keep you away from my lovely, well you'd better ask people why I'm here, if you don't already know! And your [sic] just as weak as that little girl! Stay Away Bitch or Else Pay the Price.
J.L."

trial. However, we elect to resolve the issue on its merits because of the substantial question presented. On appeal, the defendant claims the exhibit was not relevant and that its prejudicial contents outweighed any probative value.[5] Therefore, we must decide the issue under C.R.E. 401 and 403.

### A.

Relevancy is the threshold standard which all tendered evidence must meet. Evidence is relevant when it renders the claimed inference more probable than it would be without it. *People v. Madson,* 638 P.2d 18 (Colo.1981). Relevant evidence is defined in C.R.E. 401 as:

> "[E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

▮ Rule 401 is silent as to what factors the trial court must consider in deciding whether the proffered evidence meets the requisite standard of probability. "This silence emphasizes that the Federal Rules reject Wigmore's theory that legal precedents determine relevancy, in favor of Thayer's view that 'the law furnishes no test of relevancy.'" 1 *Weinstein & Berger, Weinstein's Evidence* ¶ 401[08] at 401–42 (1982) (footnotes omitted). Therefore, a trial judge has broad discretion in determining whether the tendered evidence meets the probability standard. However, this discretion is not unlimited. First, C.R.E. 102 provides that:

> "These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined."

Second, even though the drafters of Rule 401 endorsed Thayer's view that relevancy issues must be decided on a case by case basis, it is obvious that particular categories of evidentiary facts will appear in cases on a recurring basis. Legal precedents will be developed by appellate courts for the guidance of trial courts in the exercising of their discretion. Appellate review of relevancy decisions is limited because we must assume the maximum probative value that a reasonable fact finder might give the evidence and the minimum unfair prejudice to be reasonably expected. 1 *Weinstein & Berger, Weinstein's Evidence* ¶ 401[01] at 401–10 (1982).

▮ The determination of whether proffered evidence is relevant is within the sound discretion of the trial court. If the evidence has probative value in determining the central issue in dispute, the trial court's decision will not be reversed unless it is shown that there was an abuse of discretion. *See Tucker v. Lower,* 200 Kan. 1, 434 P.2d 320 (1967). In addition, both the Federal and Colorado Rules of Evidence strongly favor the admission of evidence. *See United States v. Dennis,* 625 F.2d 782 (8th Cir.1980).

### B.

▮ We now review the trial court's admission of Exhibit Q–1. The first issue to be resolved is what are the facts of consequence in the case. "Whether or not a fact is of consequence is determined not by the rules of evidence but by substantive law." 1 *Weinstein & Berger, Weinstein's Evidence* ¶ 401[03] at 401–16 (1982). Under the pertinent provisions of section 18–3–102, C.R.S. 1973 (1978 Repl.Vol. 8), the facts of consequence in the prosecution of murder after deliberation and felony murder are (1) whether the defendant, after deliberation, and with specific intent, caused the death of another person; and (2) whether the defendant in the course of committing or attempting to commit sexual assault on a child caused the death of another person.

Paragraph 2 of Exhibit Q–1 is properly characterized as an admission as opposed to

---

5. It is not clear from the defendant's brief whether his position is that the trial court erred in admitting the entire letter or whether error is predicated on the admission of paragraph 1 over his objection.

a confession. An admission is "an acknowledgement by the accused of certain facts which tend, together with other facts, to establish his guilt." 3 *Wharton, Criminal Evidence* § 694 (13th ed. 1973). An admission is also defined as "any voluntary statement by one accused of . . . crime, relating to some particular fact or circumstance and not the whole charge, which indicates a consciousness of guilt and tends to connect him with the crime charged and to incriminate him." 2 *Underhill, Criminal Evidence* § 381 (5th ed. 1956).

■ Under the rubric "consciousness of guilt," evidence of a party's behavior is relevant to show, through a series of reasonable inferences, that the accused committed the crime charged. At least two permissible inferences may be drawn from paragraph 2. First, the defendant was conscious of the fact that he had been charged with first-degree murder. Second, the permissible inference which a jury could draw from the statement "your [sic] just as weak as that little girl!" is that the defendant killed Michelle Conley, with whose murder he was charged. Accordingly, paragraph 2 of Exhibit Q–1 was relevant and was properly admitted into evidence.

■ Threats against a witness are also admissible to show consciousness of guilt. *See, e.g., United States v. Gonsalves,* 668 F.2d 73 (1st Cir.1982), *cert. denied,* 456 U.S. 909, 102 S.Ct. 1759, 72 L.Ed.2d 168 (1982); *United States v. Monahan,* 633 F.2d 984 (1st Cir.1980); *United States v. Flick,* 516 F.2d 489 (7th Cir.1975), *cert. denied,* 423 U.S. 931, 96 S.Ct. 282, 46 L.Ed.2d 260 (1975); *United States ex rel. Hill v. Pinto,* 394 F.2d 470 (3d Cir.1968); *State v. Valenzuela,* 109 Ariz. 1, 503 P.2d 949 (1972). The problem presented here, however, is that the threats were made by the defendant against a party who was not a witness in the case. That distinction is not determinative of the issue because the circumstances tend to show the defendant's consciousness of guilt on the charge of killing the child.

C.R.E. 403 establishes a balancing test. The trial court may exclude relevant evidence only "if its probative value is *sub-*

*stantially* outweighed by the danger of unfair prejudice." (Emphasis added.)

■ The rule of completeness provides a satisfactory basis for the admission of the entire document. In *McRae v. People,* 131 Colo. 305, 281 P.2d 153 (1955), we held:

"[I]f a statement made by the defendant in a criminal case is admissible in evidence as an admission or declaration, it is admissible as an entire statement, including the parts thereof which are favorable as well as the parts which are unfavorable to the party offering the same in evidence."

131 Colo. at 311, 281 P.2d 153. By admitting the entire letter into evidence, the possibility of undue prejudice and distortion which would have resulted from taking paragraph 2 out of context was avoided. The defendant's rights were protected, rather than compromised, by the trial court's decision to admit Exhibit Q–1 in its entirety. The testimony and the letter established the circumstances under which the threat was made and the defendant's possible motivation in sending the letter.

In addition to Exhibit Q–1, Exhibit Q–2 and the testimony of three of the defendant's fellow inmates at the Denver County Jail were admitted into evidence without objection. Exhibit Q–2 is a letter from the defendant to another inmate. In the letter the defendant admitted killing the child. The three inmates testified that the defendant told them he killed the child.

In applying the standards set forth in this opinion, we are persuaded that the trial court did not abuse its discretion in admitting Exhibit Q–1. The exhibit was properly submitted to the jury as part of the evidence in the case.

## II.

The defendant argues that principles of double jeopardy prohibit him from being convicted of two counts of first-degree murder for one killing. He claims that his dual convictions for one homicide violate the prohibition against double jeopardy afforded by the United States and Colorado Consti-

tutions. The People contend that the offenses of murder after deliberation and felony murder are separate and distinct crimes and that the double jeopardy clauses of the United States and Colorado Constitutions are not violated where there is a unitary trial resulting in dual convictions and concurrent sentences being imposed for the killing of one victim.

### A.

In *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 21 L.Ed. 872 (1873), the Supreme Court recognized that the double jeopardy clause of the Fifth Amendment to the United States Constitution [6] prohibits the imposition of multiple punishments for a single offense.

> "It is clear that preventing multiple punishment for the same offense was foremost in the minds of the framers of the double jeopardy clause. Until joinder became permissible and commonplace, however, multiple punishment could result only from multiple trials." (Citation omitted.)

Comment, *Twice in Jeopardy,* 75 Yale L.J. 262, 266 n. 13 (1965). The fifth amendment protection against double jeopardy under the federal constitution was made binding on the states in *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The Supreme Court has summarized the tripartite protection afforded by the double jeopardy clause as follows:

> "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." (Footnotes omitted.)

*North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). *See also Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), and *Ortiz v. District Court,* 626 P.2d 642 (Colo.1981).

The Supreme Court has adopted the "same evidence" test to determine whether two statutes proscribe the same offense. In *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Court held:

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

284 U.S. at 304, 52 S.Ct. at 182.

We adopted the *Blockburger* test in a series of cases beginning with *People v. McKenzie,* 169 Colo. 521, 458 P.2d 232 (1969). *See, e.g., People v. Bridges,* 199 Colo. 520, 612 P.2d 1110 (1980); *People v. Rael,* 199 Colo. 201, 612 P.2d 1095 (1980); *People v. Hancock,* 186 Colo. 30, 525 P.2d 435 (1974); *People v. Rivera,* 186 Colo. 24, 525 P.2d 431 (1974); *People v. Bugarin,* 181 Colo. 62, 507 P.2d 875 (1973). We adhered to the *Blockburger* test believing it to be constitutionally required. The United States Supreme Court has now clarified its decisions interpreting *Blockburger.* The *Blockburger* test is now deemed by the Supreme Court to be only a rule of statutory construction. *Missouri v. Hunter,* —— U.S. ——, 103 S.Ct. 673, 74 L.Ed.2d 535 (U.S. 1983). *See also Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), and *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). In *Missouri v. Hunter, supra,* the Court held that the "Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." —— U.S. —— at ——, 103 S.Ct. 673 at 678, 74 L.Ed.2d 535.

We reject the *Blockburger* test as the controlling principle in this case for three reasons. First, we believe that *Blockburger* is an acceptable test only in resolving the issue of whether one offense is merged into another by reason of identity

---

6. *U.S. Const.* amend. V. "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." Colorado has a similar provision. "[N]or shall any person be twice put in jeopardy for the same offense." *Colo. Const.* art. II, sec. 18.

of elements.[7]  In *Brown v. Ohio, supra,* the Supreme Court stated that "[t]he greater offense is . . . by definition the 'same' for purposes of double jeopardy as any lesser offense included in it."  432 U.S. at 168, 97 S.Ct. at 2227.  The Court added that "the sequence [of the greater and lesser offenses] is immaterial."  *Id.*  The Supreme Court has never applied the *Blockburger* test in a case where the accused has been charged with committing the same crime in alternative ways, *e.g.,* first-degree murder by felony murder and after deliberation.

Second, the *Blockburger* test focuses on the abstract proof required to establish the statutory elements.  However, in *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), the Court offered yet another approach to double jeopardy protection.  This new application focused on the actual proof to be presented at trial rather than the abstract proof necessary to establish the statutory elements.  The defendant was found guilty of failing to reduce speed by the circuit court.  The state then charged him with involuntary manslaughter in the juvenile division of the circuit court.  The Court stated that the accused would have a "substantial" double jeopardy claim if the state relied on his failure to reduce speed as the reckless act necessary to prove the crime of manslaughter.  447 U.S. at 421, 100 S.Ct. at 2267.

Third, the *Blockburger* test has fallen into considerable disfavor.  In *Whitton v. State,* 479 P.2d 302 (Alaska 1970), the Alaska Supreme Court stated:

"Although this test has been widely used by the courts, it has been increasingly criticized as not coping satisfactorily with the problem it was designed to solve.  Legislative refinement of an essentially unitary criminal episode into numerous separate violations of the law has resulted in a proliferation of offenses capable of commission by a person at one time and in one criminal transaction.  Since

each violation by definition will usually require proof of a fact which the others do not, application of the same-evidence test will mean that each offense is punishable separately.  But as the separate violations multiply by legislative action, the likelihood increases that a defendant will actually be punished several times for what is really and basically one criminal act."  (Citations omitted.)  (Footnote omitted.)

479 P.2d at 306.

In resolving questions of multiple convictions and punishments for a single act, two additional methods of analysis should be considered.  One, "[t]he Due Process Clause of the Fourteenth Amendment . . . would presumably prohibit state courts from depriving persons of liberty or property as punishment for criminal conduct except to the extent authorized by state law."  *Whalen v. United States,* 445 U.S. at 690 n. 4, 100 S.Ct. at 1437 n. 4.

█  Two, the Supreme Court has adopted the rule of lenity as a tool of statutory construction.  *Busic v. United States,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980).  The rule requires that courts resolve ambiguities in a penal code in the defendant's favor.  *Whalen v. United States, supra.*  The Court first applied the rule of lenity to a multiple punishment issue in *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), although the constitutional issue of double jeopardy did not arise.  *See also Bifulco v. United States,* 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980); *Simpson v. United States,* 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978); *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971); *Ladner v. United States,* 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958).  The rule of lenity is a corollary of the rule of statutory construction that requires penal statutes to be construed against the government.  3 *C. Sands, Sutherland Statutes and Statutory Construction* § 59.03 (4th ed. 1974).  The rule of lenity applies not only to interpretations of the

---

7.  *See* section 18–1–408(5), C.R.S.1973 (1978 Repl.Vol. 8), which codifies the test to be ap-

plied in determining whether a given offense is the lesser included of another offense.

substantive prohibitions, but also to the penalties they impose. *Bifulco v. United States, supra.*

We have likewise recognized the rule of lenity as a tool to be used in interpreting penal statutes. Colorado criminal statutes are to be strictly construed in favor of the accused. *People v. Roybal,* 618 P.2d 1121 (Colo.1980); *Pigford v. People,* 197 Colo. 358, 593 P.2d 354 (1979); *People v. Cornelison,* 192 Colo. 337, 559 P.2d 1102 (1977). "This rule of statutory construction is very similar to the federal rule of lenity." *People v. Roybal,* 618 P.2d at 1125.

■ We adopt the rule of lenity as the principle to be used in analyzing the defendant's position in the case. Therefore, we need not address the issues of whether the defendant's dual murder convictions for one homicide violate the due process or double jeopardy provisions of the United States and Colorado Constitutions.

■ Under the rule of lenity the legislature may define offenses and prescribe sentences and the courts are required to adhere to the legislative schemes for convictions

and punishments that are clear and unmistakable. However, the courts are authorized to review multiple conviction and punishment cases and invalidate convictions and/or punishments whenever the evidence for their existence is less than clear. *See Westen, Three Faces of Double Jeopardy: Reflections on Government Appeals of Criminal Sentences,* 78 Mich.L.Rev. 1001, 1026–27 (footnotes omitted) (1980).

### B.

We now turn to a resolution of the precise issue before us. The defendant contends that the trial court erred in entering judgments and sentences on two counts of first-degree murder for a single killing.

The *Colorado Criminal Code* provides that first-degree murder may be committed in four ways.[8] The shorthand definitions are (a) murder after deliberation, (b) felony murder, (c) causing the death of an innocent person who is convicted and executed as a result of perjury or subornation of perjury, and (d) extreme indifference murder.

---

**8.** Section 18–3–102, C.R.S.1973 (1978 Repl.Vol. 8 & 1982 Supp.), provides:

"**18–3–102. Murder in the first degree.** (1) A person commits the crime of murder in the first degree if:

(a) After deliberation and with the intent to cause the death of a person other than himself, he causes the death of that person or of another person; or

(b) Acting either alone or with one or more persons, he commits or attempts to commit arson, robbery, burglary, kidnapping, sexual assault in the first or second degree as prohibited by section 18–3–402 or 18–3–403, or a class 3 felony for sexual assault on a child as provided in section 18–3–405(2), and, in the course of or in furtherance of the crime that he is committing or attempting to commit, or of immediate flight therefrom, the death of a person, other than one of the participants, is caused by anyone; or

(c) By perjury or subornation of perjury he procures the conviction and execution of any innocent person; or

(d) Under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally, he knowingly engages in conduct which creates a grave risk of death to a person, or persons, other than himself, and thereby causes the death of another.

"(2) It is an affirmative defense to a charge of violating subsection (1)(b) of this section that the defendant:

(a) Was not the only participant in the underlying crime; and

(b) Did not commit the homicidal act or in any way solicit, request, command, importune, cause, or aid the commission thereof; and

(c) Was not armed with a deadly weapon; and

(d) Had no reasonable ground to believe that any other participant was armed with such a weapon, instrument, article, or substance; and

(e) Did not engage himself in or intend to engage in and had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious bodily injury; and

(f) Endeavored to disengage himself from the commission of the underlying crime or flight therefrom immediately upon having reasonable grounds to believe that another participant is armed with a deadly weapon, instrument, article, or substance, or intended to engage in conduct likely to result in death or serious bodily injury.

"(3) Murder in the first degree is a class 1 felony."

The jury found the defendant guilty of both felony murder, in which sexual assault on a child was the underlying felony, and murder after deliberation in the killing of Michelle Conley. The defendant was sentenced to life imprisonment. Apparently, the trial court imposed two concurrent life sentences. The issue thus presented is whether both judgments of conviction may be allowed to stand.

### C.

■ The most difficult problem presented by this appeal is whether the defendant committed one or two offenses. We are persuaded that the evidence could establish, as it does in this case, that a single act of killing could be committed both after deliberation and in the perpetration of one of the enumerated felonies. The crime charged here was first-degree murder. The People filed an information containing two counts. Murder after deliberation was charged in count one and felony murder was alleged in count two. The charges are a reflection of the People's *theories* of first-degree murder. The conduct prohibited by the *Colorado Criminal Code* is first-degree murder. Murder after deliberation and felony murder are not denominated by the Code as separate and independent offenses, but only ways in which criminal liability for first-degree murder may be charged and prosecuted.[9]

The legislature has not manifested any clear intent that a defendant could be con-

victed of more than one kind of first-degree murder where there is but one victim. The rule of lenity requires that the first-degree murder statute be construed to favor the defendant. That construction is that a defendant can be convicted only of one first-degree murder for one killing.

### D.

■ The next question to be answered is whether dual convictions and concurrent life sentences constitute multiple punishment. The People contend that since the life sentences are to run concurrently, the ultimate effect is that the defendant received only one sentence and any sentencing error is, therefore, harmless. We disagree. There are a significant number of important collateral consequences for a felony conviction beyond that of the sentence imposed. *Villafranca v. People,* 194 Colo. 472, 573 P.2d 540 (1978). *See also People v. Stewart,* 400 Mich. 540, 256 N.W.2d 31 (1977). In *Villafranca,* we held that an erroneous conviction for one offense should not be left intact merely because the sentence imposed is to run concurrently with the sentence imposed for another offense arising out of the same transaction. Therefore, we conclude that two convictions for one killing result in enhanced collateral punishment.

Some courts have reached a conclusion different from our decision.[10] However, the better reasoned cases have reached a

---

**9.** We are not unmindful of our recent decision in *People v. Gurule,* 628 P.2d 99 (Colo.1981), in which we held that extreme indifference murder and felony murder are separate, distinct offenses, and neither is a lesser included offense of the other under the implied acquittal doctrine. That case is legally and factually distinguishable. Under the instructions and verdict forms submitted to the jury, the defendant could have been found guilty of *either* felony murder *or* extreme indifference murder. The jury found the defendant guilty of extreme indifference murder. The conviction was reversed as required by our decision in *People v. Marcy,* 628 P.2d 69 (Colo.1981). We held that the defendant could be retried for the crime of felony murder because the guilty verdict on the charge of extreme indifference murder "did not explicitly or implicitly resolve the defendant's guilt to the crime of felony murder." 628 P.2d

at 102. Since the defendant had neither been acquitted nor convicted of first-degree murder on the theory of felony murder, the double jeopardy proscription against multiple prosecutions for the same offense was not violated. Several theories of the commission of a first-degree murder can be framed in separate counts of an indictment or information. Each theory is a separate and distinct offense in the sense that proof beyond a reasonable doubt on any count will support a finding of guilt of the offense of murder. Since there is still but one offense, the jury must reduce the multiple counts to a single verdict.

**10.** Cases upholding convictions on two charges of homicide where there is but one victim. District of Columbia: *United States v. Mack,* 466 F.2d 333, 337 n. 4 (D.C.Cir.1972), *cert.*

result consistent with our decision.[11] Only one conviction of murder is permitted for

denied, 409 U.S. 952, 93 S.Ct. 297, 34 L.Ed.2d 223 (1972) (The court construed the District of Columbia Code. The court held there was no legal obstacle to charging, convicting, and imposing concurrent sentences for both premeditated and felony murder where the crimes arose from a single criminal act.); *McFadden v. United States,* 395 A.2d 14, 17 n. 2 (D.C.App. 1978) (Dual convictions for a single killing were upheld on the theory that the concurrent sentences which had been imposed eliminated any prejudice. We rejected such reasoning in *Villafranca v. People, supra.*); *Christian v. United States,* 394 A.2d 1, 47 n. 119 (D.C.App.1978), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979) (A defendant may be indicted and convicted of both premeditated and felony murder where the charges arose from a single homicide because the offenses have different elements.).

Illinois: *People v. Miller,* 89 Ill.App.3d 973, 45 Ill.Dec. 42, 412 N.E.2d 175 (1980), *cert. denied,* 454 U.S. 871, 102 S.Ct. 339, 70 L.Ed.2d 175 (1981) (The defendant was charged with murder and felony murder. The jury returned a general verdict finding the defendant guilty of murder. The court entered a judgment of conviction on each count but sentenced the defendant for one murder.).

New York: *People v. Leonti,* 18 N.Y.2d 384, 222 N.E.2d 591, 275 N.Y.S.2d 825 (1966), *cert. denied,* 389 U.S. 1007, 88 S.Ct. 566, 19 L.Ed.2d 603 (1967) (The court upheld the defendant's convictions for both second degree murder and felony murder on the theory that a single act may violate more than one statute. In addition, there was no multiple punishment because the sentences were concurrent.).

Ohio: *State v. Ferguson,* 175 Ohio St. 390, 195 N.E.2d 794 (1964) (Convictions for premeditated murder and felony murder of the same victim did not violate double jeopardy. The Ohio Supreme Court's decision was affirmed by the Sixth Circuit Court of Appeals in *Ferguson v. Cardwell,* 452 F.2d 1011 (6th Cir.1971), *cert. denied,* 409 U.S. 854, 93 S.Ct. 187, 34 L.Ed.2d 97 (1972). The court of appeals applied Ohio law and held that the prohibition against double jeopardy is to be directed "only against successive trials." 452 F.2d at 1012.); *see also State v. Strozier,* 32 Ohio St.2d 62, 290 N.E.2d 177 (1972) (The court upheld a dual conviction on the basis of the decision in *State v. Ferguson, supra.*) and *State v. Wallen,* 21 Ohio App.2d 27, 254 N.E.2d 716 (1969).).

**11.** Cases holding that a person may be convicted of only one homicide offense for the killing of one person.

Alaska: *Gray v. State,* 463 P.2d 897 (1970) (The defendant was charged with felony murder and premeditated murder. The court held that there could be only one conviction for one killing.).

Florida: *Ubelis v. State,* 384 So.2d 1294 (Fla. Dist.Ct.App.1980) (The defendant was convicted of both manslaughter and vehicular homicide. Only one judgment and sentence can be imposed for one homicide even though the information charges two separate statutory violations.). A number of Florida cases have held that separate counts of the information charged only a single offense by different acts for which only one sentence is appropriate. *Thomas v. State,* 380 So.2d 1299 (Fla.Dist.Ct.App.1980); *Brown v. State,* 371 So.2d 161 (Fla.Dist.Ct.App. 1979), *aff'd per curiam,* 386 So.2d 549 (1980); *Miller v. State,* 339 So.2d 1129 (Fla.Dist.Ct. App.1976); *Carr v. State,* 338 So.2d 267 (Fla. Dist.Ct.App.1976); *Phillips v. State,* 289 So.2d 769 (Fla.Dist.Ct.App.1974).

Georgia: *Pressley v. State,* 235 Ga. 341, 219 S.E.2d 418 (1975); and *Burke v. State,* 234 Ga. 512, 216 S.E.2d 812 (1975) (Felony murder is included in malice murder.).

Indiana: *Thompkins v. State,* 270 Ind. 163, 383 N.E.2d 347 (1978) (The trial court erred in entering a judgment and sentence on convictions of both felony murder and first-degree murder. Since there was only one murder, to allow both judgments to stand would amount to double jeopardy.); *Roberts v. State,* 268 Ind. 348, 375 N.E.2d 215 (1978) (The court reversed the defendant's convictions for two felony murders and two premeditated murders (four charges of murder) where there were two victims.); *Bean v. State,* 267 Ind. 528, 371 N.E.2d 713 (1978) (The defendant was charged with premeditated and felony murder. The court held that a person may not be sentenced twice for a single offense arising from one set of operative circumstances.); *Franks v. State,* 262 Ind. 649, 323 N.E.2d 221 (1975) (The court held that the sentence on one count of murder must be vacated because double jeopardy prohibits a sentence on each count where there is but one victim.).

Iowa: *State v. Gilroy,* 199 N.W.2d 63 (Iowa 1972) (Sentence for felony murder and for premeditated murder imposed as the result of one homicide amounted to double punishment. Judgment upon conviction of premeditated murder was set aside.).

Kansas: *State v. Sullivan,* 224 Kan. 110, 578 P.2d 1108 (1978) (A defendant cannot be convicted and sentenced for both premeditated and felony murder arising out of one homicide.); *State v. Jackson,* 223 Kan. 554, 575 P.2d 536 (1978) (Double jeopardy is violated if a defendant is sentenced twice for one homicide.).

Maryland: *Loscomb v. State,* 45 Md.App. 598, 416 A.2d 1276 (1980), *aff'd on other grounds,* 291 Md. 424, 435 A.2d 764 (1981) (An accused cannot be convicted of both manslaughter by motor vehicle and homicide by motor vehicle while intoxicated since it is manifestly impossible to kill or slay one person twice. Even

the killing of one victim. There is only one crime of first-degree murder, although there are four ways of committing the crime. Only one judgment of conviction and one punishment can be imposed for one first-degree murder. It would be a strange system of justice that would permit the defendant to be sentenced to two concurrent life sentences for the killing of one person. *See Gray v. State,* 463 P.2d 897 (Alaska 1970). The defendant's convictions must be vacated because enhanced collateral punishment has been imposed resulting from more convictions than are permitted under section 18–3–102(3), C.R.S.1973 (1978 Repl.Vol. 8).

### III.

In order to insure that the intent of the statute is preserved and to make clear the effect of our decision, we believe it appropriate to establish the procedural steps necessary to achieve that goal. The prosecution should be allowed to charge multiple theories of first-degree murder in

though elements of two offenses are different, conviction of both amount to "piling punishment upon punishment" and "[f]undamental fairness precludes such a practice." 416 A.2d at 1285.).
Massachusetts: *Commonwealth v. Jones,* 382 Mass. 387, 416 N.E.2d 502 (1981) (A defendant cannot be convicted of both manslaughter and homicide by motor vehicle. The two offenses are sufficiently closely related so as to preclude punishment on both.).
Michigan: *People v. Densmore,* 87 Mich.App. 434, 274 N.W.2d 811 (1978) (The court held the defendant could not be convicted of both premeditated and felony murder.); *People v. Hall,* 83 Mich.App. 632, 269 N.W.2d 476 (1978) (The defendant was sentenced to six life sentences because he was convicted of felony murder and premeditated murder arising from the killing of three people. The three separate acts resulted in six murder convictions. The court found that this constituted impermissible double punishment and three of the convictions and three sentences were vacated.); *People v. Sparks,* 82 Mich.App. 44, 266 N.W.2d 661 (1978) (The defendant was charged with premeditated and felony murder. The court found that the two convictions violated the Michigan double jeopardy provision (*Const.*1963, art. 1, sec. 15). There was only one murder and therefore there could be only one crime.); *see also People v. Crown,* 75 Mich.App. 206, 254 N.W.2d 843 (1977).

separate counts.[12]   The prosecution may, but should not be required to, elect among theories after the evidence is closed.[13]   If there is sufficient evidence in the record, all theories charged should be submitted to the jury for a special verdict. The jury should be informed that the defendant is charged with one crime, first-degree murder. The jury's special verdict should indicate which theories of first-degree murder, if any, have been proved by the evidence.[14]   This procedure will avoid substantial double jeopardy questions being raised if the jury is forced to acquit on one theory in order to convict on a theory which is found to be erroneous on appeal. If the jury is asked only for a general verdict, then on appeal there is no way to decide upon which theory the jury reached its verdict. In such a case an error relating to either count would void the entire verdict.

### IV.

The defendant's convictions for two counts of first-degree murder are vacated.

Pennsylvania: *Commonwealth v. Monteil,* 273 Pa.Super. 94, 416 A.2d 1105 (1979) (The involuntary manslaughter conviction merged with the murder conviction.).

**12.** Section 18–1–408(1) and (2), C.R.S.1973 (1978 Repl.Vol. 8).

**13.** Section 18–1–408(3), C.R.S.1973 (1978 Repl. Vol. 8).

**14.** An appropriate form of special verdict in this case would have been the following:

I.   We, the jury, find the defendant,___(insert name)___, NOT GUILTY of first-degree murder.

———————————————
Foreperson

II.  We, the jury, find the defendant,___(insert name)___, GUILTY of first-degree murder and further find that

(1) ☐   the defendant,_____(insert name)_____, committed first-degree murder after deliberation;

(2) ☐   the defendant,_____(insert name)_____, committed first-degree murder by felony murder.

———————————————
Foreperson

The foreperson should sign only one of the above (I or II). If the verdict is NOT GUILTY, then I. above should be signed. If the verdict is GUILTY, then II. above should be signed.

If you find the defendant guilty of the crime charged, the foreperson must complete this GUILTY verdict by placing an "X" in the appropriate square(s). Either one or both squares shall be filled in.

This case is remanded to the district court with directions to prepare an amended judgment of conviction, sentence, and mittimus to reflect that the defendant has been convicted of murder in the first-degree in violation of section 18–3–102, C.R.S.1973 (1978 Repl.Vol. 8), and is sentenced to life imprisonment.

LOHR, J., specially concurs.

ROVIRA and QUINN, JJ., do not participate.

LOHR, Justice, specially concurring:

I concur in the judgment of the court. I believe, however, that the majority opinion that a person may be convicted of only one charge of murder for the killing of one victim is soundly grounded in statutory interpretation. It is unnecessary to this decision to discuss the exceedingly difficult constitutional doctrine of double jeopardy, and I think it inadvisable to do so.