NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

HENRY JOSEPH PASKINS, *Appellant.*

No. 1 CA-CR 14-0790
FILED 3-1-2016

Appeal from the Superior Court in Maricopa County
No.  CR2013-448616-001
The Honorable Christopher T. Whitten, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Christopher DeRose
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mikel Steinfeld
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Patricia A. Orozco joined.

---

**J O N E S**, Judge:

¶1   Henry Paskins was convicted on multiple counts but appeals only his conviction and sentence for one count of child abuse of his seven-year-old daughter, asserting the trial court committed prejudicial error by admitting irrelevant evidence and allowing improper argument from the State. For the following reasons, we affirm.

**FACTS[1] AND PROCEDURAL HISTORY**

¶2   In October 2013, Scottsdale police officers were dispatched to a church after receiving reports that individuals were trespassing on the property. The first officer to arrive observed four individuals, later identified as Paskins, his mother, his wife, and his daughter, S.P., (collectively, the family) sitting on a grassy area of the church property. The officer approached the family and asked them to leave. The family refused.

¶3   Another officer arrived and issued a trespass warning to the family. The family again refused to leave, with Paskins announcing "it would be war" if the officers tried to make them leave. More officers arrived, and church officials advised the family they did not have permission to be on the property and asked them to leave. The family again refused to leave.

¶4   The officers asked the family to leave one final time and warned that if they did not do so they would be arrested. The family still refused, and when two officers approached Paskins to arrest him, Paskins threw his arms back and knocked the officers into the side of the church building. During the ensuing scuffle, S.P., at her parents' specific command, began hitting one of the officers.

---

[1]  We view the facts in the light most favorable to upholding the verdict and resolve all reasonable inferences against the defendant. *State v. Harm*, 236 Ariz. 402, 404 n.2, ¶ 2 (App. 2015) (citing *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

¶5        Paskins continued to resist and officers eventually tased him. The tasing did not completely stop Paskins' struggle, but officers ultimately brought him under control and arrested him. Even after he was subdued, Paskins continued yelling at S.P. to fight the officers. A recording of the event captured Paskins shouting, "fight now, [S.P.] fight . . . hit him now," "fight . . . in the name of Jehovah," "punch him in the huevos," and "hit him now."

¶6        Paskins was indicted for child abuse, a class four felony, in violation of Arizona Revised Statutes (A.R.S.) section 13-3623(B)(1).[2] Consistent with the statute, the indictment alleged Paskins, "under circumstances other than those likely to produce death or serious physical injury intentionally or knowingly caused or permitted [S.P.'s] person or health to be injured or to be placed in a situation where her health was endangered." Paskins was tried jointly with his wife and mother.

¶7        At trial, the State argued Paskins placed S.P. in danger by commanding her to engage in an altercation with police officers. The State's evidence included testimony from one of the officers S.P. attacked that, when in uniform, he carries pepper spray, a taser, and a firearm with a safety on the trigger, which is disengaged simply by pulling the trigger. When the prosecutor inquired as to what would have happened if S.P. had grabbed the officer's gun, counsel for Paskins objected on relevance grounds. The objection was sustained. When the officer was later asked what he would do if anyone, a child or adult, grabbed one of his weapons, the officer answered, "my number one priority is to not let them be armed with my weapon."

¶8        On redirect, the prosecutor again asked the officer what would happen if S.P. was told "to grab onto an officer and somehow she grabbed onto an officer's gun," and if that would create "a very dangerous situation." Counsel for Paskins' wife objected on speculation and relevance grounds, and the trial court again sustained the objection. The prosecutor rephrased the question, asking generally, "if a child grabs your gun or an officer's gun or anything on them, can that be a very dangerous situation?" Again, counsel for Paskins' wife objected on relevance grounds but was overruled, and the officer answered, "yes."

¶9        A second officer who was also attacked by S.P. also testified. When questioned by the prosecutor what would happen if S.P. grabbed his

---

[2]     Absent material changes from the relevant date, we cite a statute's current version.

gun, the trial court again sustained Paskins' counsel's relevance objection. The State rephrased the question asking what the officer would do, generally, if someone grabbed his weapon. Counsel for Paskins and his mother both objected again, but the court overruled the objections, and the officer testified he "would not let that happen."

¶10 During the State's closing argument, the prosecutor stated:

> And if you start trying to move your arms around, you start trying to prevent that by using any type of force, the situation gets very dangerous very quickly. Why? Because these officers are carrying a loaded gun on the side of their hip. That gun comes out. A finger touches those triggers — a lot of them don't have [a] safety. That gun goes off. Bad things can happen.

Defense counsel did not object to this portion of the prosecutor's argument. Later in his argument, the prosecutor added:

> These officers had no intent to hurt [S.P.]. But that's not what we're here for. We're here for what the danger could have been. What this situation could have resulted in and how dangerous it was. These officers are carrying loaded weapons.

Counsel for Paskins objected to the argument, but the trial court overruled the objection.

¶11 The jury found Paskins guilty of child abuse, as well as three counts of aggravated assault and one count of resisting arrest. He was sentenced to three years' probation on each count with all sentences to run concurrently. Paskins timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I. Officer Testimony

¶12 Paskins first argues the trial court erred in admitting the officers' testimony recounted above. Absent an abuse of discretion, we will not disturb the court's decision to admit evidence. *State v. Stotts*, 144 Ariz. 72, 82 (1985) (citing *State v. Robles*, 135 Ariz. 92, 94 (1983)).

¶13         Under Arizona Rule of Evidence 401, relevant evidence is any evidence that "has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." In other words, "evidence is relevant if it 'relates to a consequential fact' that is placed in issue by 'the pleadings and the substantive law' and if it 'alters the probability, not proves or disproves the existence, of a consequential fact.'" *Yauch v. S. Pac. Transp. Co.*, 198 Ariz. 394, 401-02, ¶ 19 (App. 2000) (quoting *Hawkins v. Allstate Ins.*, 152 Ariz. 490, 496 (1987)).

¶14         The indictment charged Paskins with intentional or knowing child abuse in violation of A.R.S. § 13-3623(B)(1), which states in relevant part:

> Under circumstances other than those likely to produce death or serious physical injury to a child[,] . . . any person who causes a child . . . to suffer physical injury or abuse or, having the care or custody of a child . . . who causes or permits the person or health of the child . . . to be injured or who causes or permits a child . . . to be placed in a situation where the person or health of the child . . . is endangered is guilty of an offense . . . [i]f done intentionally or knowingly.

Paskins argues testimony about the "theoretical possibilities from a gun discharge that was never even threatened" was admitted erroneously because the State "rendered risks of death or serious physical injury irrelevant" by charging Paskins with child abuse "under circumstances other than those likely to produce death or serious physical injury." *See* A.R.S. § 13-3623(B). We disagree.

¶15         Under Rule 401, any evidence that tends to make it more probable that Paskins placed S.P. in a situation where her person or health was endangered would be relevant. Because "endangered" is not defined by the statute, we must construe it in accordance with its plain and ordinary meaning. *See State v. Mahaney*, 193 Ariz. 566, 568, ¶ 12 (App. 1999) (noting we refer to a widely used and established dictionary to determine a term's plain and ordinary meaning) (citing *State v. Korzep*, 165 Ariz. 490, 493 (1990), and *State v. Wise*, 137 Ariz. 468, 470 n.3 (1983)). Endangerment is defined as "[t]he act or an instance of putting someone or something in danger; exposure to peril or harm." Black's Law Dictionary (10th ed. 2014). Thus, any evidence showing Paskins placed S.P. in a situation exposing her to danger, peril, or harm is relevant.

¶16      Paskins asserts the testimony at issue was about "loaded guns and the possibility they could be discharged" and cause loss of life. But, this mischaracterizes the evidence. The officers' testimony was about the general dangers associated with fighting an officer and the potential for escalation given the officers' need to protect themselves and prevent their attackers from arming themselves with the officers' weapons. *See supra* ¶¶ 7-9. The officers' testimony was therefore relevant because it made it more probable that Paskins placed S.P. in a situation where she was endangered — a consequential fact — when he ordered her to attack the officers. Therefore, we conclude the court did not abuse its discretion in admitting the objected-to testimony.

¶17      Furthermore, the officers' testimony did not address the possibility that S.P. specifically could or would have been shot or otherwise injured by a weapon. Although such testimony may have been too speculative to assist the jury, and therefore inadmissible, *see State v. Cruz*, 218 Ariz. 149, 160, ¶ 45 (2008), defense counsels' objections to questions calling for such speculation were sustained. *See supra* ¶¶ 7-9. The jury was instructed to disregard questions to which objections were sustained, and we presume it did so. *See State v. Lynch*, 238 Ariz. 84, 93, ¶ 12 (2015) (citing *State v. Manuel*, 229 Ariz. 1, 6, ¶ 25 (2011)).

## II.    Closing Argument

¶18      Paskins next argues the trial court erred in allowing the portions of the prosecutor's closing argument noted above. *See supra* ¶ 10. Because Paskins did not object to the first portion of the prosecutor's argument at trial, we review only for fundamental error. *See State v. Comer*, 165 Ariz. 413, 426 (1990) ("[F]ailure to object to a comment in closing argument constitutes waiver of the right to review unless the comment amounts to fundamental error.") (citing *State v. Thomas*, 130 Ariz. 432, 435 (1981)). We find none.

¶19      As to the objected-to portion of the prosecutor's closing argument, we conduct harmless error review. *See State v. Dann*, 220 Ariz. 351, 373, ¶ 125 (2009) (noting alleged acts of prosecutorial misconduct are reviewed for harmless error) (citing *State v. Velazquez*, 216 Ariz. 300, 311, ¶ 47 (2007)). Attorneys are given wide latitude during closing argument and may comment on the evidence as well as argue all reasonable inferences therefrom. *See State v. Zaragoza*, 135 Ariz. 63, 68 (1983) (citing *State v. Mincey*, 130 Ariz. 389, 409-10 (1981), and *State v. Blazak*, 114 Ariz. 199, 204 (1977)). Here, the prosecutor's mention that the police officers were carrying loaded weapons merely reiterates the testimony and draws the

reasonable inference that Paskins placed S.P. in danger by commanding her to fight the officers.

¶20     The trial court did not abuse its discretion in allowing the State's argument, and we need not consider Paskins' argument that he was prejudiced. *See State v. King*, 158 Ariz. 419, 424 (1988) (holding that after determining that error occurred, a court must evaluate the prejudicial nature of the error) (citation omitted).

## CONCLUSION

¶21     Paskins convictions and sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama

7